GALLATIN TRUST AND SAVINGS BANK, Plaintiff and Appellant, v. ROBERT DARRAH, ANNA DARRAH and John L. DARRAH, Defendants and Respondents. JOHN L. DARRAH and ANNA R. DARRAH, Plaintiffs and Respondents, v. GALLATIN TRUST AND SAVINGS BANK, Defendants and Appellants.

No. 11356.
Submitted October 15, 1968. Decided December 17, 1968.
448 P.2d 734.

Lyman H. Bennett, Jr., argued, Bozeman, Thomas E. Towe, argued, Billings, for appellants.

Gene I. Brown, McKinley Anderson, Jr., argued, Bozeman, for respondents.

MR. JUSTICE CASTLES delivered the opinion of the Court.

This is an appeal from the judgment of the district court in Gallatin County in four different actions consolidated for trial. Judgment was entered for $13,271.61 in favor of Gallatin Trust & Savings Bank, the appellant in this action, and $4,075.16 in favor of Mr. and Mrs. John Darrah, the respondents. Both parties were instructed to endorse cashier's checks in the amount of $15,000. The appellant moved to amend the findings of fact and conclusions of law, and in the alternative moved for a new trial. These motions were denied and the bank appeals.

This case arises out of a series of transactions beginning in September 1965 and ending in May 1966, between the appellant and respondents. The transactions resulted in several actions being commenced by the appellant. In the first case appellant brought a claim and delivery action to recover possession of a 1963 pickup truck and a 1965 Chevrolet car. The relief prayed for was possession of the vehicles or a money judgment for their value. The obligation represented in this action was a note in the sum of $4,584.52 which was secured by a security agreement attached to the original complaint but never introduced into evidence. To this complaint the respondents answered claiming that they had sold a beer and liquor license for the sum of $15,000; that the appellant, through its officer, attempted to coerce the respondents to make an absolute assignment of the proceeds or they would

repossess the car and truck which were delinquent. Respondents alleged an offer of monthly payment and a request for the payoff figure on the note, and further alleged an attempt by the appellant to repossess said car and pickup at their home in the nighttime. Respondents also alleged the refusal of the appellant to give a payoff figure, and claimed damages by reason of appellant's acts in the sum of $4,075.16. This case presents the principal issues of this appeal. The other three cases involved 11 promissory notes together with two additional notes submitted, by agreement, to the court in order to settle in one action all claims arising between the parties.

The testimony presented at the trial disclosed the following facts: In January 1966, the Darrahs ran into financial difficulties and attempted to work them out with the bank. The Darrahs lost their business in Bozeman, Montana, and returned goods financed on trust receipts to the bank. During the month of January the bank secured from the Darrahs several security agreements and assignments to protect monies previously advanced. The Darrahs were also operating Gallatin Gateway Inn at Gallatin Gateway, Montana, and had purchased from funds advanced from the bank on open notes a liquor and beer license for use on those premises. The price paid for the liquor license was $15,000. The respondents closed their business in January and sold the license for the sum of $15,000. By the terms of the contract of sale, a portion of the proceeds were escrowed in the appellant bank.

In February 1966, James Updike, an officer of the bank, visited the Darrahs at their hobby shop in Livingston, Montana. He brought with him a note for the Darrahs to sign in regard to insurance and an assignment on the $15,000 proceeds from the sale of the liquor license. Mrs. Darrah refused to sign the assignment. Mr. Updike called Mrs. Darrah later and again solicited the assignment of the proceeds. He also advised her that he would not accept any

money on the February car payment. Evidently the Darrahs wanted the proceeds to be applied to a note also endorsed by respondent's father, while the bank refused this allocation of payment and insisted that the amount of the proceeds should be applied to other notes.

In the nighttime Mr. Updike appeared at the Darrah residence and advised them he had a wrecker coming to the house and that he would not accept any car payment. The Darrahs refused to let him take the cars at this time and called the sheriff. Mr. Updike was advised by the sheriff to leave the property that night, but the following Monday the vehicles were picked up by the sheriff under a claim and delivery action. According to Mrs. Darrah's testimony, after the vehicles were picked up, Mr. Updike called her and told her that she could pay off the whole amount, but did not specify an exact sum. She maintained that prior to the repossession of the cars, she had telephoned the bank and was informed that one Mr. Nelson had instructions not to accept a check for one payment and had no authority to give her a payoff figure.

Mr. Updike testified that when a check was sent to the bank by registered mail for the February payment, he called the bank upon which the check was drawn and ascertained that there were insufficient funds in that bank to cover the check. However, Mrs. Darrah also enclosed a letter with this check requesting a written payoff figure which Mr. Updike admitted was never answered by the bank.

The appellant presents the following issues for review: (1) the court's denial of a deficiency judgment in the claim and delivery action; (2) the court's finding that the appellant refused to give the respondents a payoff figure on one of the notes; (3) the court's finding that refusal to give a payoff figure on the note amounted to a waiver of tender; (4) the court's finding what a waiver of tender operates as a satisfaction of the debt; (5) the court's finding that ap-

pellant was not entitled to recover attorney fees on any of the notes; (6) the court's finding that a breach of the peace was committed by the appellant; (7) the amount of judgment entered was $4,075.16 less than the amount the court found to be owing to the bank in its findings of fact and conclusions of law; and (8) the court's denial of the appellant's motion to amend the findings of fact and conclusions of law or in the alternative for a new trial.

The first issue presented for review, phrased by appellant in terms of a specification of error, is that the appellant is entitled to a deficiency judgment although the complaint failed to plead such deficiency in the claim and delivery action. The appellant contends there was evidence that the property recovered was sold for less than the amount owing and that the pleadings were by stipulation of the parties considered amended to conform to the proof.

 It is generally accepted that the appellant cannot recover beyond the case stated by him in his complaint. This is embodied by statute under Rule 8(a) M.R.Civ.P., wherein it is stated:

"A pleading * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled."

Under Rule 15(b) M.R.Civ.P., issues not raised by the pleadings can be tried by express or implied consent of the parties. The party can amend the pleadings to conform to the evidence by motion at any time and even failure to amend does not affect the result of the trial of these issues. In the instant case no motion was made by the appellant to amend the pleadings to ask for a deficiency judgment. This Court believes that fair notice to the other party remains essential, and pleadings will not be deemed amended to conform to the evidence because of "implied consent" where the circumstances were such that the other party was not put on notice that

a new issue was being raised. 1A Barron & Holtzoff § 449; Otness v. United States, D.C.Alaska, 1959, 23 F.R.D. 279.

The record shows that a promissory note for the sum of $4,584.52 was introduced by the appellant. Mr. Updike, the bank officer, testified that the repossessed vehicles were sold and $631.19 was still owing on that note. That evidence alone was not enough to give notice to the respondents that the appellant sought a deficiency judgment.

The security agreement attached to the complaint merely became part of the pleadings under Rule 10(c) M.R. Civ.P., and was never introduced into evidence. Appellant contends that this security agreement provided that the debtor shall be liable for any deficiency, yet the complaint itself prayed for the possession of the vehicles or in the case possession could not be had, for a judgment against the respondents for their value. This Court also notes with interest that the security agreement, in conformance with the uniform commercial code, provided that written notice be sent to the debtor in the case of default, and the secured party was to give the debtor at least five days notice of the time after which any private sale was to be made. The respondents received no notice of the sale. The bank officer, Mr. Updike, admits in his testimony that no written notice of the time and place of the sale was ever sent. When asked whether any steps were taken by the bank to give the respondents a right to redeem this property, Mr. Updike stated "At anytime these people could have come in and paid off these notes we would have been very happy and we would have given them the property." There is nothing in the record that indicates the appellant ever gave the Darrahs the total amount of money needed in order for them to redeem the property. In addition, the deposition of Mr. Updike taken before the trial gave no indication to the respondents that the bank sought a deficiency judgment.

The district court did not err in refusing to allow a de-

ficiency judgment since the appellant had not pled any claim for a deficiency in its complaint and the respondents had no fair notice that the issue of a deficiency judgment was presented to the court.

Appellant contends in the second specification of error that the court's finding that the Darrahs attempted to obtain a payoff figure on the note and the bank refused does not conform to the evidence. There is no merit in this contention since the record clearly indicates that the appellant did not intend to accept any payments unless the respondents agreed to give the appellant an absolute assignment on the proceeds of the license. The letter sent by Mrs. Darrah requesting a payoff figure was never answered by the bank. Mrs. Darrah's testimony also indicates that they were never able to get a conclusive figure on what was needed to pay off the note from the bank.

In the third specification of error, appellant contends that the court erred in finding that refusal to give a payoff figure amounted to a waiver of tender. After the trial court found that the appellant refused to give a payoff figure to the respondents, the court also found that the respondents were able to pay off and redeem the vehicles but tender on their part would have been a useless and idle act. Appellant claims that there is no evidence that the Darrahs could have paid the total amount due on the note at that time, or nearly $4,000. The Darrahs were in financial difficulties and the music store they were running was returned to the owner. They were also forced to deliver mortgaged merchandise to the bank. However, the bank was holding in escrow $15,000 in cashier's checks which had only to be endorsed before the note could be paid off. At the time the vehicles were repossessed, the bank had a security interest in approximately $6,599.95 of this amount, leaving the Darrahs over $8,000 equity in these proceeds. The evidence is absolutely clear that the bank would not accept any payments.

unless the respondents assigned the license proceeds to it and further, if the Darrahs refused to assign these proceeds the bank would repossess the motor vehicles. An unconditional assignment to the bank would mean that the bank would be free to apply the money in any manner it wished to the notes and not necessarily in a way that would best serve the interests of the respondents. The findings by the trial court are not in error since there was evidence that the Darrahs had the ability to pay off the car note at the time of the repossession and a formal tender would have been futile due to the position the bank had taken in regard to the liquor license proceeds.

The appellant contends further that the court erred in awarding damages in the amount of $4,075.16 to the respondents. Since this amount equals the unpaid balance on the car note when the incidents out of which the court found a refusal to give a payoff figure arose, the appellant claims that the court considered the effect of tender to be a total extinguishment of the debt. Under section 58-423, R.C.M. 1947, this effect would result only when the debtor immediately deposit the amount due in the name of the creditor with some bank of deposit in this state. This was not done in the instant case. However, under section 58-427, R.C.M.1947, any tender or offer of payment stops the running of interest on the obligation and has the same effect upon all incidents as performance itself. In other words, since the court found that a waiver of tender had occurred the bank would not be entitled to collect interest from that date forward.

The trial court found an unlawful conversion by the appellant of the respondents' pickup and automobile. However, there was no evidence of any kind introduced by the respondents at the trial to indicate that they suffered any damages other than the value of the vehicles shown to be $3,420 by the appellant and no evidence was introduced showing a different value. Any damages awarded to the respond-

ents should have been limited to this amount since the $3,420 evidently represented the actual value of the vehicles wrongfully converted and the respondents failed to prove any other damages.

Appellant's fifth contention is that the court erred in finding and concluding the bank was not entitled to recover attorney fees and costs in connection with the promissory notes which the court found were due and owing. The conclusions of law as stated by the court with reference to attorney fees read as follows:

"That since both plaintiff and defendent have recovered and lost in this cause, and that since all of these transactions are a series of one transaction both parties shall pay own attorney's fees and costs."

The finding of fact and conclusions of law are in favor of the bank on every claim except one joined in this suit. The claims of the bank were not one transaction; they involve different debts incurred at different times, secured by different collateral and sued on in different actions. They were joined together for convenience of trial and to save time. Furthermore, the notes sued upon call for payment by the respondents for all costs of collection including reasonable attorney fees. Excluding the car note on which no attorney fees are allowed, in this case that sum amounts to $4,968.69 plus costs of suit—according to the stipulation entered into between the appellant and respondents that the local bar minimum fees would be deemed reasonable attorney fees.

The respondents agreed to pay cost of collection including reasonable attorney fees when they signed the notes and first borrowed the money. The respondents are bound to pay reasonable attorney fees under the terms of their contract and presented no justification for not fulfilling this part of their obligation on all the notes upon which the appellant received recovery. As a matter of law, the appellant is entitled to receive its costs and reasonable attorney

fees for each note upon which it recovered judgment. Citizens Nat. Bank of Orange, Va. v. Waugh, 4 Cir., 78 F.2d 325.

Finally, appellant argues that the judgment does not conform to the findings of fact and conclusions of law. One of the conclusions of law states the bank is entitled to relief in the amount of $17,346.77 less $4,075.16 which was recovered by the Darrahs. The judgment, however, proceeds to deduct the amount awarded the Darrahs a second time, leaving the bank with a total judgment of $9,196.45. This is clearly erroneous and the district court is hereby instructed to correct the same.

In this Court's view, the remaining issues presented by the appellant are not decisive of this appeal and are therefore unnecessary to discuss further.

The judgment of the district is reversed and the cause remanded to the district court with instructions to modify the judgment in accordance with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and JOHN HARRISON, concur.