NO. 83-77

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IVAN J. HOEFER and PATRICIA A.
HOEFER,

Plaintiffs and Respondents,

vs.

LISOLETTE E. WILCKENS,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Lake
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Murray, Kaufman, Vidal & Gordon, Kalispell, Montana
John  R. Gordon argued, Kalispell, Montana
K. M. Bridenstine, Polson, Mt.

For Respondents:

Christian, McCurdy & Wold, Polson, Montana
Matthew H. O'Neill argued, Polson, Montana

Submitted:  September 29, 1983

Decided:  May 31, 1984

Filed: MAY 3 1 1984

*Ethel M. Harrison*
_____
                          Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant, Liselotte E. Wilckens, as a codefendant in an action by plaintiffs, Ivan J. Hoefer and Patricia A. Hoefer, for slander of title and real estate broker malpractice, appeals from a Lake County District Court judgment finding her liable on both counts. Because the findings are not supported by substantial evidence, we reverse.

The controversy arises from a real estate transaction involving a contract for deed, a promissory note, and an assignment. The dispute is between the plaintiff purchasers and the defendants, a real estate broker and agent, who handled the transaction. The sellers are not involved.

The purchasers could not pay the entire downpayment and the broker and agent loaned them the money, taking a 90 day promissory note in return. Later, ostensibly to secure the promissory note, the purchasers gave the broker and agent an assignment of their interest in the property they were purchasing. When the purchasers failed to pay the promissory note, the broker recorded the assignment and he and the agent continued to make payments on the contract. The purchasers sued the broker and agent to have the assignment set aside and sued the broker only for slander of title and broker malpractice. In addition, one of the purchasers, Ivan Hoefer, also sued the broker to foreclose a mechanic's lien for plumbing work he had done on a real estate office and apartment that the broker was converting from a service station. Defendant Young counterclaimed to set aside the mechanic's lien and for attorney fees.

The trial court set the assignment aside and also held that plaintiff purchasers had proved slander of title and

- 2 -

broker malpractice against the broker and the agent. However, there was no proof that the agent participated in or even had knowledge of the acts or omissions properly attributed to the broker. It appears from the court's findings and conclusions that the agent was held liable for slander of title and broker malpractice solely because she was associated with the broker in the underlying real estate transaction. The court seemed to implicitly recognize the fact that the agent had not participated in the acts or omissions of the broker when it assessed punitive damages only against the broker. The broker filed a notice of appeal, but he failed to perfect it.

Based on the slander of title and broker malpractice claims, the trial court also ordered that both the broker and agent must pay the attorney fees the plaintiffs incurred in prosecuting the case. The court ordered that the agent could offset the attorney fees she had to pay against the contract payments, taxes and assessments she had paid in helping to keep the payments on the contract for deed current. The duty of the agent to pay attorney fees, however, depends on the validity of the underlying judgment against her for slander of title and broker malpractice. The agent argues that the findings are not supported by substantial evidence, and further, that she was denied due process by the failure of plaintiffs to notify her before trial that she too was accused of slander of title and broker malpractice. The agent further claims that the assignment is valid as to her as representing a security interest, and that judgment should have been entered in her favor for the contract payments and taxes and assessments she paid in helping to keep the contract for deed current.

On the mechanic's lien issue, the court invalidated the lien because it was not filed within the statutory deadline, but entered judgment for plaintiff, Ivan Hoefer, based on an open account for plumbing services rendered to the broker. The court also ordered that plaintiff Hoefer must pay the broker's attorney fees for defending the mechanic's lien foreclosure suit. Neither party has appealed from the foreclosure. The evidence as to the plumbing services rendered by plaintiff Hoefer to the broker does, however, bear on the question of whether the broker kept the agent informed of the plumbing bill he incurred and refused to pay.

Agent presents two issues. First, whether there is substantial evidence to support the judgment against her for slander of title and broker malpractice. Second, whether she was given adequate notice that the purchasers were bringing a claim against her as well for slander of title and broker malpractice.

We reverse the judgment against the agent because we find the substantial evidence issue dispositive. However, we also determine that the purchasers denied the agent due process by their failure to notify her before trial that they were seeking judgment against her also for slander of title and broker malpractice. We also determine agent Wilckens is entitled to judgment for the contract payments, taxes and assessments she paid in keeping the payments on the contract for deed current.

Although we are concerned only with the facts and circumstances surrounding agent Wilckens' participation in the sale, a complete review of the facts will place her participation in its proper context.

Defendant Young was in 1977, a licensed real estate broker, d/b/a Flathead Lake Realty in Polson, Montana. Defendant Wilckens was at that time employed by Flathead Lake Realty as a real estate salesperson. Young was the only licensed broker in the company at that time.

The owners, Calvin and Marva Christian, listed for sale a ten acre plot with Flathead Lake Realty. After the agent showed the site to the purchasers they agreed to purchase it by contract for $15,500. Purchasers, Ivan and Patricia Hoefer, paid $500 earnest money in July 1977, and agreed to close in August by paying the $1,500 balance of the downpayment. Yearly payments under the contract for deed were $2,011.91.

The purchasers did not have the balance of the downpayment in August so the closing date was extended to September. When the purchasers did not have the money again in September, the broker and agent agreed at that time to pay the remainder of the downpayment with their combined commission of $1,500. The record does not show exactly where the money was drawn, but it appears that a cash payment was made to the sellers from the account of Flathead Lake Realty. The purchasers then signed a promissory note for the $1,500 advance, payable to Flathead Lake Realty in 90 days.

All the necessary papers were signed by the parties on September 28, 1977. Among them was a notice of purchasers' interest signed by the purchasers, which was to be filed with the county clerk and recorder to give notice of their interest in the property. The broker had a duty to file this notice to protect the purchasers' interest, but he failed to do so. The agent, on the other hand, assumed that the broker

had filed this notice and she did not learn that he had not filed it until this dispute arose.

The title company also issued a $15,500 title commitment to the buyers, to be followed by a title insurance policy. However, the policy when issued, instead of being in the names of the purchasers, was in the names of the broker and agent. Although the broker knew this to be the fact, the agent did not know that she was a named insured on the policy until this dispute arose. She always assumed it had been issued in the names of the purchasers.

After the signing of the promissory note, another document, an assignment, entered into the picture. Before the promissory note was due, the broker decided that security was needed on the note, and on or about October 31, 1977, the purchasers gave the broker and agent an assignment of their interest in the property. The broker testified that they discussed the necessity of an assignment as security at the time the promissory note was signed, but the purchasers denied this. The purchasers signed the assignment without having it acknowledged, and in fact there was no acknowledgment jurat on the document when they signed it. However, after the purchasers had given the signed document to the broker, the broker taped an acknowledgment paragraph onto the bottom of the assignment document. He took this document to a notary public. The notary, acting contrary to the law (sections 1-5-201, -206, -207, 70-20-106, MCA), acknowledged the purchasers' signatures in the purchasers' absence.

When the promissory note fell due in late December 1977, the broker, in addition to the note, had possession of the notice of purchasers' interest (which he should have filed

the previous September to protect the purchasers' interest),
and the illegally acknowledged assignment. The record does
not disclose whether Flathead Lake Realty made any demands of
the purchasers to pay the note when it fell due. However,
six months later, in June 1978, the note was still unpaid. A
dispute exists as to whether Flathead Lake Realty then made a
demand on the purchasers to pay the note or notified them
that upon failure the assignment would be recorded divesting
the purchasers of their interest in the property. The broker
testified that he wrote a letter in June to the purchasers
telling them to pay the note within 5 days or that the
assignment would be filed divesting them of their interest in
the property. A copy of this letter was introduced in
evidence. The purchasers, however, testified that they did
not receive this letter. Although the trial court made no
finding as to whether the broker mailed the letter, the court
did find that the purchasers did not receive the letter.

In June 1978, the broker recorded the assignment and the
notice of purchasers' interest. The purchasers were not
aware of this recorded assignment until late summer of 1978.
At that time they noticed someone cutting hay on the land,
and in checking the courthouse records, found the recorded
assignment to the broker and agent.

We digress here to bring the mechanic's lien dispute
into the picture, for it bears on the relationship between
purchaser, Ivan Hoefer, and the broker, Donald Young, and it
tends to show that the agent, Liselotte Wilckens, was not
kept informed that at the same time the broker was obtaining
the assignment from the purchasers, he was also disputing
with purchaser Ivan Hoefer on plumbing work that Hoefer had
done for the broker.

- 7 -

The history of the mechanic's lien litigation started shortly before the real estate transaction involved here. Ivan Hoefer, one of the purchasers, is a plumber by trade who owned the Plumb Shop in Polson. In August, 1977, before the parties closed the real estate deal, the broker contracted with Ivan Hoefer to do plumbing work on an old gasoline station that the broker was remodeling for an office and an apartment. Work was to be done on an open account, time and material cost basis. The agent, Liselotte Wilckens, knew nothing about the details of the plumbing contract between Hoefer and the broker.

Hoefer started plumbing work in early August 1977, and worked off and on until completing the work in April 1978. He billed the broker for $2,221.24, but the broker did not pay. Hoefer then suggested that the broker apply the plumbing bill as an offset on the amount due on the promissory note. That would have left a balance of $721.72 due Hoefer. The broker refused, however, and the bill remained unpaid. As a result, Hoefer filed a mechanic's lien against the property on which he had worked.

We have already noted the result of the mechanic's lien foreclosure suit. The lien was disallowed, but Hoefer was given a judgment on an open account based on the plumbing he did for the broker, and Hoefer was ordered to pay the broker's attorney fees for defending the mechanic's lien foreclosure suit. We emphasize, however, that agent Wilckens had no knowledge that the broker still owed Hoefer for a plumbing bill, and had no knowledge that Hoefer had filed a mechanic's lien on the broker's service station property for plumbing services rendered.

The basis for the slander of title judgment against the agent is a ruling that the broker and agent acted maliciously in obtaining and recording the assignment divesting the purchasers of their interest in the property. Although the evidence supports the judgment against the broker (and the broker has not appealed), the trial court's findings against the agent are wholly unsupported by the evidence.

To establish slander of title, purchasers were required to prove that the agent acted with malice, First Security Bank of Bozeman v. Tholkes (1976), 169 Mont. 422, 547 P.2d 1328, and without reasonable justification or right. Jumping Rainbow Ranch v. Conklin (1975), 167 Mont. 367, 538 P.2d 1027. The record clearly establishes that when the agent asked the broker to record the assignment she assumed she had the right to protect her interest because the buyers were six months in default on the promissory note. The evidence established no other motive of the agent in asking the broker to file the assignment.

The evidence with regard to the plumbing contract and claimed mechanic's lien also sheds light on the slander issue. The agent did not know the details of the plumbing contract between Hoefer and the broker, and she did not know that at the time the assignment was recorded that the purchaser (Hoefer) had already filed a mechanic's lien on the broker's property for the plumbing work that he had done. In fact, she did not know that the broker still owed Hoefer money on the plumbing contract. This evidence tends to establish that the broker was alone in charge of the assignment and its filing, and that he did not inform the agent of the important details or of other factors bearing on his relationship with the purchasers. The evidence of the

agent's involvement establishes only that she acted to protect what she perceived was her right to record the assignment after the purchasers were six months in default on the promissory note. Such evidence falls far short of establishing malice.

On the broker malpractice claim, the trial court made six findings of specific acts or omissions by the broker and agent constituting broker malpractice. The findings of the violations are based largely on the standard of care required of realtors in Lake County under the Code of Ethics and Standards of Practice of the National Association of Realtors. Although the findings may have been appropriate as to the acts or omissions of the broker, they were not as to the agent. The findings seem to be based on an implied assumption that the agent was responsible for all acts and omissions of the broker, but this is not the case.

First, the trial court found that the broker and agent concealed the fact that the broker failed to file the notice of purchasers' interest. However, the agent testified that she did not know the broker was required to immediately file the notice, and further, that she did not know that he had not done so. There is no evidence to the contrary. Second, the trial court found that the broker and agent concealed the fact that the title insurance policy had been issued in their names instead of the purchasers' names. But the agent testified that she always assumed the policy had been issued in the purchasers' names. There is no evidence to the contrary.

Third, the trial court found that the broker and agent failed to supply the purchasers with a copy of the assignment, as required by section 37-51-321, MCA. However,

the agent was in no position to give the purchasers a copy of the assignment because the purchasers did not sign the assignment at the same time. The agent testified that Mrs. Hoefer signed the assignment in the presence of the agent, but Mr. Hoefer was not present. The agent then turned the partially signed document over to the broker and the broker arranged and conducted all the business at the later meeting when Mr. Hoefer signed the assignment. There is no evidence to the contrary. Clearly, the duty was on the broker to provide the purchasers with a copy of the assignment, for the assignment was not complete until Mr. Hoefer signed it in the presence of the broker.

Fourth, the court found that the acceptance of the promissory note by the broker and agent from the purchasers created a conflict of interest that imposed a duty on the broker and agent to advise the purchasers to seek legal counsel. Although this may be true as to the broker, the agent was only a salesperson at this time and was not familiar with the duties of a broker under Montana law, such as a duty to advise clients to seek legal advice in the event of a conflict of interest.

Fifth, the trial court found that the broker and agent had acted to wrongfully divest the purchasers of title by obtaining and recording the assignment. While this also may be true as to the broker, the only evidence in the record is that the agent acted only to protect her interest in obtaining payment on the promissory note, and at the time the assignment was filed the purchasers were six months in default. No ulterior motives can be attributed to the agent. She did not know the broker's intent in obtaining and recording the assignment, and she did not know that the

broker still owed Hoefer for the plumbing bill and that as a result Hoefer had filed a mechanic's lien against the broker's property.

Sixth and finally, the trial court found that the broker and agent had altered the assignment document after it was signed by taping the acknowledgment paragraph to the document and illegally presenting it to a notary for an acknowledgment, and that the notary illegally acknowledged the purchasers' signatures without requiring their presence. However, the broker admitted that he alone was responsible for doing this. There is no evidence in the record that the agent knew or approved of what the broker had done.

In summary, the evidence does not support a judgment against the agent for slander of title or broker malpractice. In finding the agent liable on both causes of action, the trial court failed to independently consider and evaluate the agent's conduct as opposed to the acts and omissions of the broker. We are led to assume that the agent was found liable solely because of her association with the broker. But innocent association does not make the agent responsible for the wrongful acts of the broker.

The Due Process Notice Issue

Although our holding on the substantial evidence issue disposes of the case, we cannot ignore the procedure by which the agent was found liable on the claims of slander of title and broker malpractice. Without question, the agent had inadequate notice that the plaintiffs were also seeking a judgment against her on these claims.

The agent was first notified that such a judgment was being sought against her while she was being examined as an adverse witness by the plaintiffs' counsel. The nature of

- 12 -

the questions brought forth this information. However, the agent's counsel did not object to the inquiry into these matters and should have done so. Perhaps he did not object because he did not see that it was important because the complaint did not seek such relief from the agent. Perhaps it was because a conflict of interest existed, in that he represented both the broker and the agent.

Although the circumstances of the broker and agent retaining the same attorney are not in the record, it is fair to assume that when he was retained, the broker, the agent, and the attorney assumed that the only relief being sought from agent was a nullification of the assignment to which she was a party. Had the agent received notice that she also was charged with slander of title and broker malpractice, the attorney would most likely have told her that he could not represent both her and the broker. Had the agent known of these facts in advance, she might have of her own volition retained separate counsel to represent her interests. Given these procedural facts, it is not surprising that her counsel did not object to the evidence of the agent's alleged complicity in the slander and malpractice claims.

The purchasers argue that the agent implicitly consented to the trial of these issues because the agent's counsel did not object to questions seeking to establish her complicity in the wrongful acts of the broker. However, once the questioning started, a conflict of interest was readily apparent. Was the attorney representing the agent or the broker? If the attorney was paid primarily by the broker, it would undoubtedly have been in the broker's interest to have the agent also embroiled in the slander of title and broker malpractice issues. Clearly, the attorney may not have been

- 13 -

representing the agent's best interests once he became aware that the purchasers were seeking judgment against her also for slander of title and broker malpractice.

Assuming, furthermore, that no conflict of interest existed, it is not enough that it appears the agent consented to the trial of the issues; it must also appear that the agent had adequate notice that the issues would be tried. Here adequacy of notice is not an issue. The agent had no notice at all. Implied consent to trial of issues not raised in the pleadings will only be effective where the apparent consenting party has received adequate notice that new issues will be raised at trial. It is a fundamental question of due process of law: the right to notice. Gallatin Trust & Savings Bank v. Darrah (1968), 152 Mont. 256, 448 P.2d 734. Without adequate notice, a party cannot prepare a meaningful defense. Raising the issues for the first time during the cross-examination of the party cannot be classified as adequate notice.

Rights of The Parties

Because of our reversal of the slander of title and broker malpractice judgment against the agent, the award of attorney fees against the agent must also fall. The broker alone is responsible to pay the purchasers' attorney fees.

The trial court's judgment voiding the assignment is affirmed. The assignment was at no time a perfected document because of the failure to obtain the purchasers' acknowledgment on the assignment. If it were simply an issue of whether a valid assignment could be enforced by the broker and agent as a security device, then section 70-21-102, MCA, would permit this result, for there are no third parties involved here, and Montana law requires an acknowledgment

only if the document is to be recorded. However, Montana has
a specific statute that controls conveyances of real property
by married persons. Section 70-20-106, MCA, provides:

> ". . . No estate in the real property of a married
> person passes by any grant purporting to be
> executed or acknowledged by such person unless the
> grant or instrument is acknowledged by the grantor
> in the manner prescribed by 1-5-206 and 1-5-207."

Sections 1-5-206, and -207, MCA, require, among other things,
that the married grantor must appear before the notary to
properly acknowledge the conveyance. This was not done. We
therefore hold that the assignment, even as between the
parties, was invalid and could not convey even a security
interest in the contract for deed to secure performance of
the promissory note signed by the purchasers. Therefore,
neither the broker nor the agent have a security interest in
the property that is the subject of the contract for deed.

The agent, however, was in good faith in making the
payments on the property that is the subject of the contract
for deed. For some time now she has made the annual payments
and paid the taxes and assessments as they became due. She
is entitled to payment of these items. She is entitled to
judgment for the amounts she has paid.

All other portions of the trial judgment concerning
agent Wilckens and not inconsistent with this opinion are
affirmed. This cause is hereby remanded to the trial court
with instructions to enter judgment against purchasers and in
favor of agent Wilckens for all amounts she has paid on the
contract and for the taxes and assessments on the property.
This amount shall be reduced by any amounts the agent has
actually received from haying operations on the property.

_____
                        Justice

We Concur:

_____


_____


_____
                        Justices


Mr. Justice Fred J. Weber will file a special concurring opinion later.

NO. 83-77

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IVAN J. HOEFER and PATRICIA A.
HOEFER,

Plaintiffs and Respondents,

vs.

LISOLETTE E. WILCKENS,

Defendant and Appellant.

Special Concurrence of Mr. Justice Fred J. Weber

Majority Opinion handed down:   May 31, 1984

Special Concurrence filed:

_____
Clerk

FILED

JUN 0 - 1984

Ethel
CLERK OF SU...
STATE OF M...

Mr. Justice Fred J. Weber specially concurs as follows:

While I concur in the majority opinion, I emphasize the strange requirement for married persons as distinguished from unmarried persons under section 70-20-106, MCA.

Generally, acknowledgment of an instrument is required only as a prerequisite to recording of the instrument. Section 70-21-203, MCA. Unrecorded and unacknowledged instruments are generally valid as between the parties and those with notice. Section 70-21-102, MCA. However, section 70-20-106, MCA makes these general rules inapplicable to married persons based upon historical assumptions which are no longer valid.

At common law, conveyances by married women were void for lack of contractual capacity. III American Law of Property §12.73, p. 338, (1952). The only method of alienation of a married woman's title was apparently by the judicial proceedings known as "fine" and "common recovery." Id.

However, this incapacity to contract was to a limited extent removed by statutes in various jurisdictions which allowed conveyances by married women under specified conditions:

> "A number of states require that the acknowledgment of a married woman, whether as to her own property or of her dower rights in her husband's property, be taken separately from her husband. These statutes are intended for the protection of married women against the undue influence of their husbands based on the old fable that the male is dominant. In a conveyance of land by a married woman, her acknowledgment, under such statutes, is an essential part of the execution. Unless her deed is acknowledged substantially in the mode prescribed by statute, it is absolutely void . . .. Such [acknowledgment] procedure is judicial in nature and designed as a substitute for the proceedings at common law by fine and recovery. When the certificate shows that a married woman was examined apart from her husband, and that the officer explained to her the import and effect of the deed, and she declared that she freely and voluntarily executed it and acknowledged it as her act and deed, the purpose of the law is attained . . .." 7 Thompson on Real Property §3310, pp. 564-566 (1962) (footnotes omitted).

Beyond seeking protection of the married woman's interest, such acknowledgment proceedings were also intended to secure a "sure, indefeasible, and unquestionable transfer of her rights." 1 C.J.S. Acknowledgments §80.

In Montana this acknowledgment requirement for married women was applied for many years until it was modified in 1975 so as to apply to all married persons. That amendment was part of a general revision of Montana statutes designed to eliminate sexual discrimination. After amendment, the statute was identical except that it applies to a "married person" rather than a "married woman."

The acknowledgment requirement originally enacted for a married woman was based upon some presumed incapacity on her part. Because of that faulty foundation, the statute should have been repealed. Unfortunately it has now been extended so that there is a presumed incapacity as to both married men and women.

The effect of the statute is to invalidate an unacknowledged conveyance by a married person. No such rule is applied to single persons. I believe this to be a proper area for legislative review.

Justice