

DA 13-0012

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 246

JIM BATES,

      Petitioner/Respondent and Appellee,

  v.

LAURA LEE NEVA,

      Respondent/Charging Party and Appellant.


APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                      In and For the County of Stillwater, Cause No. DV 12-39
                      Honorable Blair Jones, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Patricia D. Peterman, Michael F. McGuinness; Patten, Peterman,
                Bekkedahl & Green, PLLC; Billings, Montana

        For Appellee:

                Jim Bates, self-represented; Fishtail, Montana


                             Submitted on Briefs:  June 26, 2013

                                  Decided:  September 3, 2013


Filed:

              _____
                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Laura Lee Neva (Neva) alleges that Appellee Jim Bates (Bates) violated Montana's Human Rights Act (the Act) by halting necessary repairs to the commercial building she rented from him because she rebuffed his sexual advances. Section 49-2-304, MCA (the Public Accommodation Provision), makes it unlawful for a place of public accommodation to deny to a person its "services, goods, facilities, advantages, or privileges" because of a person's sex. Section 49-2-305, MCA (the Real-Estate Transaction Provision), makes it unlawful for an owner, lessor, or manager of a "housing accommodation or improved or unimproved property" to discriminate in the use, sale, lease, or rental of the property because of a person's sex. In her complaint to the Human Rights Commission (the Commission), Neva alleged violation of the Public Accommodations Provision but made no mention of the Real-Estate Transaction Provision. The Commission nevertheless found that Bates violated the Real-Estate Transaction Provision by sexually harassing Neva while she was leasing commercial space from him. The District Court reversed that decision, holding that the Commission's action violated Bates's right to due process. We reverse, and address the issue:

¶2 *Did the District Court err by concluding due process principles prohibited the Commission from ruling that Bates violated § 49-2-305, MCA, when Neva only specified a violation of § 49-2-304, MCA, in her pleadings?*

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 During June 2009, Neva agreed to rent from Bates a commercial building she hoped to turn into an art gallery. The building was not immediately tenantable, however. Its roof leaked and other repairs were needed before it was suitable for customers and safe to display artwork. Bates and Neva came to an agreement: Bates would pay for materials and make the repairs; in return, Neva would help with repairs, would not pay rent until the repairs were complete, and would receive a month's free rent once the building was ready to open for business. While they worked together during July 2009 to make the premises tenantable, the repairs were still unfinished months later, and Neva vacated the building without ever having paid rent.

¶4 On January 21, 2010, Neva filed a handwritten complaint with the Commission entitled "Sexual Harassment by Landlord." Neva alleged Bates sexually harassed her in person, over the telephone, and by email. Two weeks later, Neva filed an amended complaint, alleging that Bates was her landlord and that he had stopped making necessary repairs to the building when she rebuked his sexual advances, and, as a result, she was forced to find an alternative location. Neva claimed that Bates's conduct violated the Public Accommodation Provision of the Act. Neither the complaint nor the amended complaint mentioned the Real-Estate Transaction Provision. Bates answered, denying the allegations of sexual harassment and arguing that Neva was never his tenant. In subsequent briefing, Neva and Bates argued over whether Neva was a tenant. Neva alleged that as a tenant she had the right to be free from discrimination from her landlord.

3

Bates argued that no tenancy existed because he and Neva had never agreed to specific terms.

¶5     On August 29 and 30, 2011, a contested-case hearing was conducted by a hearing officer.  Neva and Bates testified.  Neva described numerous instances of inappropriate conduct by Bates that made it uncomfortable for her to be in the building.  Bates would routinely stand unnecessarily close to Neva while she was working.  Once Bates grabbed her right breast to "get her attention."  He told her once that there was a "problem" because he "didn't know what color underwear [she] was wearing."  Another time, while Neva was on her hands and knees planting flowers, Bates approached her holding a strawberry in front of his crotch, telling Neva to "open up and eat this."  On another occasion when Neva was working on her knees, Bates made a comment about Monica Lewinsky.  When Neva was using a power blower to clear debris from the roof, Bates told her "what a nice blow job" she was doing.  Neva said that Bates would telephone to tell her that he was "naked" and getting in the shower and "just wanted to give [her] some food for thought."  The hearing examiner also admitted six emails Bates sent Neva over a two-day period in July 2009.  In part, the emails discussed upcoming plans for repairs, but they also contained explicit sexual comments.  Neva testified she never gave Bates reason to think his advances were welcome, but that she was careful not to upset him because she had yet to receive a written lease and was afraid he would renege on their verbal agreement.  When she finally told Bates that he was "nothing but a landlord" to her, he stopped making repairs.

¶6     Bates explained that he had never prepared a written lease for Neva because rent was not due until the repairs were completed, but testified to aspects of a tenancy relationship between them. Bates conceded he convinced Neva to rent the building instead of purchasing because of the disrepair, and because he felt it would be unwise for Neva, a new business owner, to incur so much debt. According to Bates, he did not withhold repairs because Neva rebuffed his advances; rather, he was unable to continue repairs because Neva installed a security system and refused him access to the building. Bates admitted to sending the emails to Neva and explained that he continued to send them even after she did not respond because he took her silence to mean she was not offended. Bates could not recall whether he had commented on Neva's underwear, but said it would not surprise him because that was the type of "wisecracks" he routinely made.

¶7     The hearing officer determined that Bates had sexually harassed Neva, and described Bates's conduct as "severe," "persistent," and "patently unwelcome." He found that Bates discontinued making repairs because Neva rejected his advances and refused to grant him "unfettered access to the premises." However, the hearing officer concluded that Bates's conduct did not violate the Public Accommodations Provision because Bates's building was private property not open to the public. Without citing the Real-Estate Transaction Provision, the hearings officer concluded that the Act only prohibited discrimination in housing leases, not commercial leases: "The [Act] does not

5

address illegal discrimination in commercial, as opposed to housing, leases between private individuals."

¶8 Neva appealed to the Commission, arguing the hearing officer had erred by concluding the Act did not prohibit discrimination in commercial-lease settings. The Commission agreed with Neva, reasoning that the term "improved or unimproved property" in the Real-Estate Transaction Provision broadly applied to "all types of real estate," including commercial property. The Commission reversed the hearing officer's dismissal and remanded the case to the hearing officer with leave to take additional evidence as necessary to "determine an appropriate damage award."

¶9 Bates petitioned the District Court for judicial review of the Commission's decision. He argued that the Commission erred by (1) analyzing Neva's discrimination claim under the Real-Estate Transaction Provision, and (2) concluding the Act applied to commercial leases. Concurring with Bates's first argument, the District Court vacated the Commission's decision and reinstated the hearings officer's dismissal of Neva's complaint. The District Court reasoned that while Bates may have violated the Real-Estate Transaction Provision, § 49-2-305, MCA, Neva never alleged such discrimination. The District Court concluded that allowing Neva to recover under a statute she never cited would violate Bates's due process rights:

> While the Commission determined that the Department had jurisdiction over Neva's Complaint under § 49-2-305, MCA, Neva pled and argued her claim under § 49-2-304, MCA. It is not the province of the Commission or this Court to re-characterize a specific claim brought under a specific statute on behalf of a complainant. Because Neva never requested relief under § 49-2-305, MCA, it would be a violation of Bates' due process

6

rights to allow her to recover on this basis on remand. Notwithstanding Neva's argument that Bates was on notice of a possible claim under § 49-2-305, MCA, it is not Bates' responsibility to guess what is or might be the appropriate statutory claim providing Neva the opportunity for relief.

Thus, the District Court did not reach the issue of whether the Act applied to commercial leases. Neva appeals.

## STANDARD OF REVIEW

¶10    We review an agency's findings of fact to determine if they are clearly erroneous. Section 2-4-704(2)(a)(v), MCA; *Owens v. Mont. Dept. of Revenue*, 2007 MT 298, ¶ 12, 340 Mont. 48, 172 P.3d 1227. We review an agency's conclusions of law to determine if they are correct. Section 2-4-704(2)(a)(iv), MCA; *Owens*, ¶ 12.

## DISCUSSION

¶11    The Act prohibits discrimination "on the basis of race, creed, religion, color, sex, physical or mental disability, age or national origin" in certain enumerated settings. *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 16, 323 Mont. 453, 100 P.3d 987; *see* §§ 49-2-303, MCA through 49-2-310, MCA. Two of those settings are relevant here: places of public accommodation and real-estate transactions. The Public Accommodation Provision provides:

> [I]t is an unlawful discriminatory practice for the owner, lessee, manager, agent, or employee of a public accommodation:
>     (a) to refuse, withhold from, or deny to a person any of its services, goods, facilities, advantages or privileges because of sex[.]

Section 49-2-304(1)(a), MCA. The Real-Estate Transaction Provision provides:

7

It is an unlawful discriminatory practice for the owner, lessor, or manager having the right to sell, lease, or rent a housing accommodation or improved or unimproved property or for any other person:

. . .

(b) to discriminate against a person because of sex . . . in a term, condition, or privilege relating to the use, sale, lease or rental of the housing accommodation or property[.]

Section 49-2-305(1)(b), MCA. Sexual harassment is a form of sexual discrimination because it constitutes discrimination on the basis of the victim's sex. *See Harrison v. Chance*, 244 Mont. 215, 220-21, 797 P.2d 200, 203-04 (1990) (holding "sexual harassment is sexual discrimination under the Montana Human Rights Act.").

¶12 *Did the District Court err by concluding due process principles prohibited the Commission from ruling that Bates violated § 49-2-305, MCA, when Neva only specified a violation of § 49-2-304, MCA, in her pleadings?*

¶13 The District Court concluded, without citation, that "[b]ecause Neva never requested relief under § 49-2-305, MCA [the Real-Estate Transaction Provision], it would be a violation of Bates's due process rights to allow her to recover on this basis on remand." Neva asserts error because her claim has always been that Bates, as her landlord, sexually harassed her and retaliated against her by halting building repairs when she refused his advances. She argues that, from the beginning, "Bates was aware of and has had a full opportunity to defend himself against each of Neva's claims." Bates counters that he "did not have notice of [a § 49-2-305, MCA] claim and did not have the opportunity to defend that claim. . . ." because "[a]ll pleadings and other filings submitted

8

by Neva in connection with the contested hearing phase of this litigation alleged discrimination in the area of public accommodation only."

¶14    Both the Fourteenth Amendment to the United States Constitution and Article II, § 17 of the Montana Constitution provide that no person shall be deprived of property "without due process of the law."  It is axiomatic that "'due process is flexible and calls for such procedural protections as the particular situation demands.'" *State v. West*, 2008 MT 338, ¶ 32, 346 Mont. 244, 194 P.3d 683 (original brackets omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 1600 (1972)).  "Indeed, 'the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *West*, ¶ 32 (original brackets omitted) (quoting *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748 (1961)).  "Rather, '"asserted denial of due process of law is to be tested by an appraisal of the totality of facts in a given case.  That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial."'" *West*, ¶ 32 (original brackets omitted) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850, 118 S. Ct. 1708, 1719 (1998) in turn quoting *Betts v. Brady*, 316 U.S. 455, 462, 62 S. Ct. 1252, 1256 (1942)).

¶15    Consistent with this description of due process as "flexible," we have, on occasion, permitted the resolution of issues not specifically raised in a civil complaint. While it is "generally accepted" that a plaintiff "cannot recover beyond the case stated by

9

him in his complaint[,]" *Gallatin Trust & Sav. Bank v. Darrah*, 152 Mont. 256, 261, 448 P.2d 734, 737 (1968), Rule 15(b) of the Montana Rules of Civil Procedure provides that an issue not explicitly pleaded but nonetheless "tried by the parties' express or implied consent" is to be "treated in all respects as if raised in the pleadings." *Reilly v. Maw*, 146 Mont. 145, 154-55, 405 P.2d 440, 446 (1965) (quoting Rule 15(b)) (affirming district court's finding of oral contract even though the "existence of an oral contract is not claimed in the plaintiffs' complaint"); *see also McJunkin v. Kaufman & Broad Home Systems, Inc.*, 229 Mont. 432, 437, 748 P.2d 910, 913 (1987) ("Under Rule 15(b), M.R.Civ.P., when issues not raised by the pleadings or amended by the pretrial order *are tried by the express or implied consent of the parties, they shall be treated as if raised in the pleading.*") (emphasis added). Rule 15(b) is carefully cabined, so to avoid "question[s] of due process," to the uncommon situation when an issue not pled is tried by the "parties' express or implied consent." *Brothers v. Surplus Tractor Parts Corp.*, 161 Mont. 412, 418, 506 P.2d 1362, 1365 (1973). In order to find that an issue was litigated by "implied consent," the other party must be "put on notice that [the] issue was being raised[,]" *Gallatin Trust & Sav. Bank*, 152 Mont. at 261, 448 P.2d at 737, and the parties must have "actually tried" the issue. *Reilly*, 146 Mont. at 154, 405 P.2d at 446 (concluding that the parties "actually tried" unpleaded issue of the existence of an oral contract because "[v]irtually every witness called, whether by plaintiffs or the defendants gave testimony about an agreement between the plaintiffs and defendant . . . .").

¶16     These principles also apply in administrative proceedings.  *See e.g. Golden Grain Macaroni Co. v. F.T.C.*, 472 F.2d 882 (9th Cir. 1972).  Whether a party's due process rights have been violated by an administrative agency granting relief not specifically pleaded in an administrative complaint depends upon the specific facts of each case.  *Golden Grain Macaroni*, 472 F.2d at 885-86.  "[T]here is no due-process violation, if the party proceeded against 'understood the issue' and 'was afforded full opportunity' to justify its conduct."  *Golden Grain Macaroni*, 472 F.2d at 885-86 (quoting *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, 350, 58 S. Ct. 904 (1938)).  Conversely, if an issue was not fully litigated, and the "party proceeded against was not given an opportunity to defend himself, an adverse finding on that issue by the agency does violate due process."  *Golden Grain Macaroni*, 472 F.2d at 886 (collecting cases).

¶17     In *Golden Grain Macaroni*, the United States Court of Appeals for the Ninth Circuit upheld, against a due process challenge, an administrative ruling that Golden Grain Macaroni Company had violated the Clayton Act, even though the administrative complaint alleged only a violation of the Sherman Act.  The Federal Trade Commission (FTC) instituted divestiture proceedings against Golden Grain, "the largest seller of dry-past[a] food products in the Pacific Northwest," for its unlawful acquisition of three other macaroni producers.  *Golden Grain Macaroni*, 472 F.2d at 884.  The FTC's complaint alleged that Golden Grain violated § 2 of the Sherman Act by monopolizing or attempting to monopolize the market in the region.  The complaint made "[n]o mention of Section 7 of the Clayton Act . . . ."  *Golden Grain Macaroni*, 472 F.2d at 884.  Before

11

the hearing examiner, both parties argued the "sole issue" of monopolization. *Golden Grain Macaroni*, 472 F.2d at 885. The hearing examiner determined that Golden Grain had not violated § 2 of the Sherman Act, but that it had nonetheless violated § 7 of the Clayton Act, which prohibited "acquisitions the effect of which 'may be substantially to lessen competition, or to tend to create a monopoly.'" *Golden Grain Macaroni*, 472 F.2d at 885 (quoting § 7 of Clayton Act codified at 15 U.S.C. § 18). The FTC affirmed the hearing examiner's order, and Golden Grain petitioned for judicial review, arguing that its right to due process had been violated. *Golden Grain Macaroni*, 472 F.2d at 884-85. The Ninth Circuit Court disagreed, holding that although the complaint was lacking, there was no due-process violation because both § 2 of the Sherman Act and § 7 of the Clayton Act dealt with impermissible monopolization, the facts of which the parties had "fully litigated":

> In the present case the initial complaint, while hardly a model of clarity, *put Golden Grain on notice* that the specific practices as well as the alleged over-all scheme of monopolization were being challenged. Moreover, an examination of the proceedings subsequent to the complaint demonstrates that while there was some confusion as to the nature of the charge, *all facts relevant to the alleged unlawful acts were fully litigated*. Actual litigation is often referred to in support of a holding that a party was not prejudiced by initially inadequate pleadings.

*Golden Grain Macaroni*, 472 F.2d at 886 (emphasis added). The court noted that Golden Grain was unable to point to evidence that was absent from the hearing record that it would have developed had it known of the additional charge under § 7 of Clayton Act. *Golden Grain Macaroni*, 472 F.2d at 886-87 ("if an evidentiary stone was left unturned on the central issues it has not been brought to our attention."). In sum, the court

12

concluded that Golden Grain had notice of the issue and was afforded an opportunity to defend where, despite differences between the Sherman Act and Clayton Act, the same facts were pertinent to both theories.[1]

¶18 In *Mackay Radio & Telegraph*, 304 U.S. at 349-51, 58 S. Ct. at 912-13, the U.S. Supreme Court rejected a due process challenge to an administrative decision that ventured beyond the complaint. There, the National Labor Relations Board (NLRB) alleged a telecommunications company had violated the National Labor Relations Act by refusing to *re-employ* telegraph operators who had attempted to return to their jobs following a failed strike. *Mackay Radio & Telegraph*, 304 U.S. at 349, 58 S. Ct. at 912. However, the hearing officer determined that Mackay had violated the National Labor Relations Act by *wrongfully discharging* the telegraph operators by replacing them with other workers. *Mackay Radio & Telegraph*, 304 U.S. at 349, 58 S. Ct. at 912. Mackay argued that this action violated due process because it was "found guilty of an unfair labor practice which was not within the issues upon which the case was tried." *Mackay*

---

[1] Other U.S. Circuit Courts of Appeal follow this framework. *See e.g. NLRB v. Blake Constr. Co.*, 663 F.2d 272, 283 (D.C. Cir. 1981) ("Elemental due process prevents this court from granting enforcement of remedies that go beyond the scope of the complaint and are directed toward violations of the [National Labor Relations] Act *not noticed or actually tried* before the ALJ or the Board.") (emphasis added); *NLRB v. Local Union No. 25*, 586 F.2d 959, 961 (2d Cir. 1978) (rejecting legal challenge to provision of National Labor Relations Act because its legality was "not raised in the amended complaint, in the briefs, or in oral argument, *and no evidence was presented concerning that issue.*") (emphasis added); *Bruhn's Freezer Meats of Chicago v. U.S. Dept. of Agric.*, 438 F.2d 1332, 1342 (8th Cir. 1971) (no due process violation where agency granted relief based on statute not alleged in complaint because the record showed that the issue was a "live one"); *J.B. Williams Co. v. F.T.C.*, 381 F.2d 884, 888 (6th Cir. 1967) (affirming relief on issue "not charged in the complaint" because evidence of the issue was "present throughout the record").

*Radio & Telegraph*, 304 U.S. at 349, 58 S. Ct. at 912. The U.S. Supreme Court rejected Mackay's argument, describing it as "highly technical." The Court reasoned that the record demonstrated that the parties understood the focus of the NLRB's complaint— Mackay's failure to give the telegraph operators their jobs back. *Mackay Radio & Telegraph*, 304 U.S. at 349, 58 S. Ct. at 912.

¶19 The case here is strikingly similar to *Golden Grain Macaroni*. Although Neva's amended complaint could have been clearer in asserting a claim under § 49-2-305, MCA, the Real-Estate Transaction Provision, we hold it was sufficient to put Bates on notice of the nature of the claim Neva was bringing: that she rented commercial property from Bates who committed unlawful sexual harassment. In his briefing before the hearing officer, Bates framed one of the pertinent legal questions as: "Is the relationship between a commercial building owner and a tenant or potential tenant subject to [the Act]," a reference to the applicability of the Real-Estate Transaction Provision. Further, the record reveals that Bates and Neva "fully litigated" the questions of the nature of their business relationship and whether Bates sexually harassed Neva. During the contested case hearing, both Neva and Bates testified at length about the lease agreement between them. Just as Golden Grain Macaroni was unable to point to evidence it would have developed had it been on notice it was being charged with a violation of § 7 of the Clayton Act, *Golden Grain Macaroni*, 472 F.2d at 886-87, Bates has not brought to our attention any evidence that he would have developed had he known Neva was claiming a violation of the Real-Estate Transaction Provision. Rather, Bates's argument is akin to

14

the "highly technical" difference between failure to re-employ and wrongful discharge argued by the telegraph company and rejected by the Court in *Mackay Radio & Telegraph*. The essential difference between a § 49-2-304 claim and a § 49-2-305 claim is the setting of the discrimination—a place of public accommodation as opposed to a real-estate transaction. The setting here was fully litigated, as was the discrimination—Bates's sexual harassment of Neva. Bates "'understood the issue' and 'was afforded full opportunity' to justify [his] conduct." *Golden Grain Macaroni Co.*, 472 F.2d at 885-86 (quoting *NLRB v. Mackay Radio & Telegraph Co.*, 304 U.S. at 350, 58 S. Ct. at 913). Therefore, Bates's due process rights were not violated.[2]

¶20    As noted above, the District Court disposed of Neva's claim without addressing whether the Act applies to commercial leases. We reverse and remand this case to the District Court for further proceedings to analyze that question, in the first instance.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS

---

[2]   Bates cites our line of authority that provides that courts are not to address issues raised for the first time on appeal or a change in legal theory. *See Day v. Payne*, 280 Mont. 273, 276-77, 929 P.2d 864, 866 (1996); *Unified Ind., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100; *Gary & Leo's Fresh Food, Inc. v. State*, 2012 MT 219, ¶ 16, 366 Mont. 313, 286 P.3d 317. This authority is unavailing because we have here determined that a new issue or legal theory is not being raised for the first time on appeal. Rather, the parties litigated Bates's sexual harassment of Neva and the setting of their commercial-lease agreement.