JUSTICE BAKER
delivered the Opinion of the Court.
¶1 Jim Bates appeals the Twenty-Second Judicial District Court’s ruling that the Montana Human Rights Act (MHRA) applies to Laura *351 Lee Neva’s claim of sexual harassment in her lease of commercial property from Bates. The issue we address on appeal is whether the MHRA applies to Neva’s commercial lease. We conclude that it does and affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 In June 2009, Neva approached Bates about leasing a commercial property in Absarokee for an art gallery. The building was not immediately tenantable because it had a leaky roof and other problems. The two came to a verbal agreement: Bates would pay for the materials and make the repairs, while Neva would help with the repairs and would not pay rent until a month after the building’s condition permitted the gallery to open for business.
¶3 In July 2009, the two worked together on the repairs. Neva would later testify to numerous instances of inappropriate conduct by Bates during this month, including grabbing Neva’s breast, commenting on Neva’s underwear, and telephoning Neva to tell her that he was naked. Bates also sent a string of emails to Neva, later admitted into evidence, in whichhe proposed sexually explicit encounters. Neva eventually told Bates that he was “nothing but a landlord” to her. Bates then stopped making repairs, though the two dispute whether that was because Neva rebuffed his advances or because Neva installed a security system preventing Bates from gaining unfettered access to the building.
¶4 In 2010, Neva filed a complaint with the Montana Human Rights Bureau, alleging that Bates violated the MHRA by sexually harassing her. In 2011, after a contested hearing, a hearing officer found that Bates had “severely]” and “persistently]” harassed Neva, and that the harassment was “patently unwelcome.” Despite these findings, the hearing officer concluded that the harassment occurred in a context that neither the MHRA’s public accommodation nor real estate provisions cover. With regard to the MHRA’s real estate provisions, the hearing officer declared, “The MHRA does not address illegal discrimination in commercial, as opposed to housing, leases between private individuals.”
¶5 Neva appealed the hearing officer’s determination to the Montana Human Rights Commission. Examining the text of the MHRA, the Commission concluded that it “prohibits unlawful discrimination in commercial property transactions, as well as all other real estate transactions.” Accordingly, the Commission ruled that Neva could proceed with her claim.
¶6 Bates sought judicial review, arguing that the Commission: (1) *352 violated his right to due process by analyzing Neva’s action under the MHRA’s real estate provisions, and (2) incorrectly interpreted those provisions. Ruling for Bates on the due process argument, the District Court vacated the Commission’s decision and reinstated the hearing officer’s.
¶7 Neva appealed the District Court’s order to this Court and we reversed, concluding that Bates received due process. Bates v. Neva, 2013 MT 246, ¶¶ 19-20, 371 Mont. 466, 308 P.3d 114. We remanded, directing the District Court to resolve the issue that formed the alternate basis for Bates’s challenge to the Commission’s decision: whether the MHRA’s real estate provisions apply to Neva’s commercial lease. Bates, ¶ 20.
¶8 On remand, the District Court concluded that the MHRA’s real estate provisions prohibit discrimination in commercial real estate transactions. The court entered an order on February 27, 2014, remanding the case to the Montana Department of Labor and Industry’s Hearings Bureau for further proceedings, including a determination of damages. Bates appeals the District Court’s decision and order, thus presenting to the Court this matter of first impression.
STANDARD OF REVIEW
¶9 The correct interpretation of a statute is a question of law that we review de novo. City of Missoula v. Iosefo, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180.
DISCUSSION
¶10 The MHRA prohibits an “owner, lessor, or manager” leasing a “housing accommodation or improved or unimproved property” from discriminating on the basis of sex “in a term, condition, or privilege” relating to property’s “use” or “lease.” Section 49-2-305(1), (l)flb), MCA. “[Sjexual harassment is sexual discrimination under the [MHRA].” Harrison v. Chance, 244 Mont. 215, 221 ,797 P.2d 200,204 (1990).
¶11 Based on the plain meaning of improved or unimproved property as used in § 49-2-305(1), MCA, the District Court concluded that the MHRA prohibits discriminationin commercial real estate transactions. The court posited that a plain reading of the statute yields three categories of real estate transactions in which discrimination is prohibited: (1) housing accommodation transactions, (2) improved property transactions, and (3) unimproved property transactions. The court noted that only a “strained” reading of the statute would support reading “housing,” which clearly modifies “accommodation,” as also *353 modifying “improved property or unimproved property.” The court further pointed out that, if improved property meant housing property, it would mean essentially the same things as a housing accommodation. Thus, the court concluded that under “approved usage of language, improved property’ includes commercial improved property, as there is no provision limiting it to residential improved property.”
¶12 Bates argues that the District Court got it wrong. Specifically, he interprets “housing accommodation or improved or unimproved property” to mean “housing accommodation or housing property.” This interpretation, he suggests, reflects the Legislature’s intention to make the MHRA equivalent to the Federal Fair Housing Act with regard to real estate transactions. He argues that this interpretation also better comports with § 49-2-305’s title, which refers to discrimination in housing, and with its other subsections that reference housing. Further, he suggests that his interpretation gives proper weight to how the Montana Human Rights Bureau, charged with administering the MHRA, applied § 49-2-305, MCA, only in housing transactions until it did otherwise in this case. Finally, he argues that his interpretation gives meaning to all of the statute’s words because a housing property includes vacant housing whereas a housing accommodation does not.
¶13 We interpret statutes consistently with the Legislature’s intent as crystallized in the statute’s plain language. In re Marriage of Rudolf, 2007 MT 178, ¶ 41, 338 Mont. 226, 164 P.3d 907. Specifically, in interpreting a statute, we are “simply to ascertain and declare what is in the terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. It is not our prerogative to read into a statute what is not there. Rudolf, ¶ 41. As the District Court pointed out, to determine whether the MHRA applies to Neva’s lease, one must ascertain the meaning of at least two terms: “housing accommodation” and “improved or unimproved property.” “Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.” Section 1-2-101, MCA.
¶14 First enacted in 1974, the MHRA recognizes and declares that “[t]he right to be free from discrimination because of race, creed, religion, color, sex, physical or mental disability, age, or national origin” is a “civil right.” Section 49-1-102(1), MCA. The MHRA prohibits discrimination in a number of circumstances, including real estate transactions:
(1) It is an unlawful discriminatory practice for the owner, lessor, or manager having the right to sell, lease, or rent a housing *354 accommodation or improved or unimproved property or for any other person:
(b) to discriminate against a person because of sex, marital status, race, creed, religion, age, familial status, physical or mental disability, color, or national origin in a term, condition, or privilege relating to the use, sale, lease, or rental of the housing accommodation or property....
Section 49-2-305(1), MCA (emphasis supplied). The MHEA defines housing accommodation as “a building or portion of abuilding, whether constructed or to be constructed, that is or will be used as the sleeping quarters of its occupants.” Section 49-2-101(14), MCA.
¶15 The MHRA does not define improved or unimproved property. “When the legislature has not defined a statutory term, we consider the term to have its plain and ordinary meaning.” Giacomelli v. Scottsdale Ins. Co., 2009 MT 418, ¶ 18, 354 Mont. 15,221 P.3d 666. In ascertaining plain meaning, we have ‘long adhered to ‘ordinary rules of grammar.’ ” Thompson v. J.C. Billion, Inc., 2013 MT 20, ¶ 22 n. 5, 368 Mont. 299, 294 P.3d 397 (quoting Jay v. Sch. Dist. No. 1 of Cascade Cnty., 24 Mont. 219, 225, 61P. 250, 252 (1900)).
¶16 Bates argues that, in the phrase “housing accommodation or improved or unimproved property,” improved or unimproved property is limited to housing property. But that construction requires reading “housing” as modifying improved or unimproved property. Plain language and proper usage of grammar militate against that reading. Specifically, the series-qualifier canon of statutory interpretation, which calls for reading a pre-positive modifier as modifying all items that follow in a series, applies only where the items in the series have parallel construction. Black’s Law Dictionary 1574 (Bryan A. Garner ed., 10th ed. 2009). If the items do not have parallel construction because a modifier is interspersed between them, the result is that the pre-positive modifier applies only to the first item in the series and does not carry over. Ward Gen. Ins. Servs., Inc. v. Emp’rs Fire Ins. Co., 7 Cal. Rptr. 3d 844,849 (Cal. Ct. App. 2003) (“Most readers expect the first adjective in a series of nouns or phrases to modify each norm or phrase in the following series unless another adjective appears.” (emphasis supplied)); Antonin Scalia & Bryan A. Gamer, Reading Law: The Interpretation of Legal Texts 148 (2012) (“The typical way in which syntax would suggest no carryover modification is that a determiner ... will be repeated before the second element.”). To illustrate, the phrase “skinny men or happy or sad women” is *355 syntactically identical to “housing accommodation or improved or unimproved property.” But no reasonable reader would read “skinny” to modify “happy or sad women.” Instead, a reasonable reader would read “skinny” as modifying only “men” and “happy or sad” as the sole modifiers of “women.” Likewise, because we adhere to “the ordinary rules of grammar,” Jay, 24 Mont, at 225, 61 P. at 252, we read “housing” to modify “accommodation” and not “improved or unimproved property.”[1]
¶17 The MHRA’s definition section confirms that “housing accommodation” and “improved or unimproved property” are separate and distinct terms. As noted, the statute defines housing accommodation, § 49-2-101(15), MCA, but not improved or unimproved property. The phrase “housing accommodation and improved or unimproved property” is thus split, with only the first term in the phrase having been given a specific definition to be applied to the exclusion of the term’s plain and ordinary meaning. Reading “improved or unimproved property” as dependent on “housing” contravenes the separation the Legislature created.
¶18 Reading improved or unimproved property as dependent on “housing” also contravenes our obligation to, if possible, “give effect to all” words in a statute. Section 1-2-101, MCA; Mont. Trout Unlimited v. Mont. Dep’t ofNat’l Res. & Conservation, 2006 MT 72, ¶ 23, 331 Mont. 483, 133 P.3d 224 (“We must endeavor to avoid a statutory construction that renders any section of the statute superfluous or fails to give effect to all the words used.”). Bates argues that improved or unimproved property, as modified by “housing,” is different from a housing accommodation because improved or unimproved property accounts for vacant housing land, whereas a housing accommodation does not. But the definition of housing accommodation specifies that the term applies not just to housing that is constructed and in which someone resides, but also to housing “to be constructed,” and buildings that “will be used as sleeping quarters” even if not currently used as such. Section 49-2-101(15), MCA. If improved or unimproved property is read simply to refer to vacant housing, the term will add nothing to the statute that is not already included in “housing accommodation.” ¶19 We need not contrive a specialized meaning for improved or *356 unimproved property because the plain and ordinary meaning of this phrase gives it a separate meaning from a housing accommodation. Improved property is a commonly-used term to refer to land with a structure on it. Black’s Law Dictionary 1008 (defining “improved land” as “Q]and that has been developed; esp., land occupied by buildings and structures”); Philip A. Benson & Nelson L. North, Real Estate Principles and Practices 48 (1924) (“A purchaser in offering to buy improved property is always presumed to be intending to purchase three things: 1. the land, 2. the structure, capable of occupancy and rentable, and 3. the right to maintain it.”). Unimproved property corresponds as land without a visible structure on it. Black’s Law Dictionary 1009 (defining “unimproved land” as “[r]aw land that has never been developed, and usu. that lacks utilities” or “Q]and that was formerly developed but has now been cleared of all buildings and structures.”). The separation ofhousing accommodation from improved or unimproved property by the disjunctive “or” suggests that improved or unimproved property refers to types of real estate that a housing accommodation does not. Interpreting improved or unimproved property to include commercial real estate gives effect to all the statute’s words.
¶20 Bates questions this plain reading by pointing out that § 49-2-305, MCA, refers many times to housing and ideas related to housing, but never explicitly mentions commercial real estate. This argument overlooks that most of § 49-2-305’s references to “housing” áre within the phrase “housing accommodation or property” that is echoed throughout the statute and that plainly refers back to the phrase “housing accommodation or improved or unimproved property” in § 49-2-305(1),MCA.See, e.g„ §§49-2-305(l)(a), (lXb), (lXc),MCA(emphasis supplied). This argument further overlooks that where the Legislature has added specific housing or residential limiting language, it has been to address particular housing issues such as housing for the disabled, § 49-2-305(5M6), MCA, and the financing, selling, or appraising of residential real property, § 49-2-305(7), MCA.
¶21 Bates also calls our attention to § 49-2-305’s title in the Montana code (“Discrimination in housing — exemptions”) to suggest that the title reveals the Legislature’s intent. But “unless specifically and expressly adopted as part of the law by the legislature... catchlines, or other editorial material included in the Montana Code Annotated may not be construed as part of the legislative text but are only for the purpose of convenience, orderly arrangement, and information.” Section 1-11-103(5), MCA. Titles in the code are subordinate to *357 statutory text and cannot be used to create ambiguity. Manufacturers Acceptance Corp. v. Krsul, 151 Mont. 28, 35, 438 P.2d 667, 672 (1968); State ex rel. Palagi v. Regan, 113 Mont. 343, 351,126 P.2d 818, 824 (1942). Thus, barring any evidence that the Legislature specifically adopted § 49-2-305’s current title, we will not rely on § 49-2-305’s title in the code to call into question the plain meaning of the section’s text. Moreover, the title that the Legislature gave to the MHRA in 1974was “An Act to Prevent Discrimination in Employment, Public Accommodations, Education, and Beal Properly Transactions...” and, in the original version of the MHRA, the anti-discrimination provisions were combined in one section broadly entitled, “Discriminatory practices described and prohibited.” These titles suggest that the MHRA was not designed to prohibit discrimination in housing transactions alone.
¶22 Bates also points to our recognition that “[t]he Montana Legislature has indicated its clear intent that the MHRA be interpreted consistently with federal discrimination statutes and case law.” BNSF Ry. Co. v. Feit, 2012 MT 147, ¶ 8, 365 Mont. 359, 281 P.3d 225. Bates suggests that we should read tire MHRA as regulating discrimination only in housing because that is all that the Federal Fair Housing Act regulates.
¶23 In Feit, we held that obesity may constitute a physical or mental impairment under the MHRA. Feit, ¶ 16. In discussing the definition of disability, we stated that the “MHRA [is] to be interpreted consistently with federal discrimination statutes and case law.” We specifically noted that “the definition of physical or mental disability [in the MHRA] is substantially identical to that in the [Americans with Disabilities Act]” and that the Legislature in creating that definition in 1991 did so on the premise that the previous disability definitions “lacked clarity and are inconsistent with definitions used in federal civil rights statutes and court interpretations on the subject.” Feii, ¶ 8. ¶24 In contrast to Feit, where the language and histoiy of the statute supported reading the MHRA’s disability provisions identically to federal law, the language and histoiy of the statute do not support reading § 49-2-305, MCA, as identical to federal law. Tellingly, with § 49-2-305, MCA, the Legislature did not adopt substantially similar language to the MHRA’s federal counterpart. The Federal Fair Housing Act purports to regulate only “dwelling[s],” 42 U.S.C. § 3604, defined as “any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence of one or more families, and any vacant land which is offered for sale or lease for the *358 construction or location thereon of any building, structure, or portion thereof.” 42 U.S.C. § 3602(b). Unlike the MHRA section considered in Feit, which included a term and definition (“physical or mental impairment”) adopted whole cloth from a federal statute, the Legislature in § 49-2-305, MCA, did not employ the federal statute’s key term (“dwelling”) or its definition. Instead, the Legislature used the term “housing accommodation,” for which it provided a residential definition, and the separate term “improved or unimproved property,” for which it provided no definition. Section 49-2-305(1), MCA. We are bound to construe the Legislature’s choice as deliberate.
¶25 Finally, Bates argues that the Montana Human Rights Bureau, the agency charged with administering the MHRA, long has applied the statute only to housing transactions, and we should thus defer to an agency interpretation limiting the MHRA to housing transactions. This argument ignores that the Human Rights Commission in this very case determined that the MHRA is not limited to housing transactions and applies to commercial real estate transactions.[2]
¶26 The purpose of the MHRA is to protect the individual right to be free from discrimination. Section 49-1-102(1), MCA. If a provision in the MHRA is susceptibly to more than one plausible construction (Dissent, ¶ 35), then we adopt the construction that provides the intended protection. See Stokes v. Mont. Thirteenth Jud. Dist. Ct., 2011 MT 182, ¶ 15, 361 Mont. 279,259 P.3d 754 (“In our interpretation of a statute, ‘we must view it as a part of a whole statutory scheme and construe it so as to forward the purpose of that scheme.’ ” (quoting Wright v. Ace Am. Ins. Co., 2011 MT 43, ¶ 24, 359 Mont. 332, 249 P.3d 485)). It is not the Court’s role to “insert what has been omitted” and interpret improved or unimproved property to encompass only housing property, when the plain language of the statute does not supply that restriction. Section 1-2-101, MCA. That role belongs to the Legislature and it may choose to amend the MHRA if it sees fit to do so. State v. Goebel, 2001 MT 73, ¶ 23,305 Mont. 53,31 P.3d 335 (“ET]o the extent that the statute does not accurately reflect the Legislature’s clearly *359 expressed intention, it is appropriate that the Legislature correct the problem, not the courts.”). Until then, we hold that improved or unimproved property as used in the MHRA includes commercial real estate; the MHRA thus applies to Neva’s commercial lease.
CONCLUSION
¶27 We affirm the District Court’s decision and order. We remand for proceedings consistent with the District Court’s February 27, 2014 order.
CHIEF JUSTICE McGRATH, JUSTICES COTTER, SHEA and WHEAT concur.

 Bates might have a stronger argument if we were interpreting the phrase “housing accommodation or properly, whether improved or unimproved.” The word “housing” then might be susceptible to an interpretation that it modifies “property.” But that is not the language that we interpret today.

 At the end of hie brief, Bates argues in a single paragraph that, even if we find that the MHRA regulates discrimination in commercial real estate transactions, we should not apply that holding to this case because Neva’s claim was not investigated within the 120 days mandated in § 49-2-504(7Xa), MCA. We do not address issues raised for the first time on appeal. Stevens v. Novartis Pharms. Corp., 2011 MT 282, ¶ 78, 358 Mont. 474, 247 P.3d 244. Although Bates claims in his reply brief that he raised this issue with the District Court and cites to the record as support, following the citation reveals that the issue was not raised.