FILED

05/26/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0312

DA 19-0312

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 132

FLATHEAD LAKERS INC., a Montana non-profit public
benefit corporation, AMY J. WALLER, STEVEN F. MOORE,
CYNTHIA S. EDSTROM, ADELE ZIMMERMAN,
MARTIN FULSAAS and GAIL A. WATSON-FULSAAS,
LAUREL FULLERTON, ALAN and DEIRDRE COIT,
and FRANK M. WOODS,

　　　　Petitioners and Appellees,

　　v.

MONTANA DEPARTMENT OF NATURAL RESOURCES
AND CONSERVATION, and MONTANA ARTESIAN
WATER COMPANY,

　　　　Respondents and Appellants,

WATER FOR FLATHEAD'S FUTURE,

　　　　Intervenor and Appellee.

APPEAL FROM:　　District Court of the First Judicial District,
　　　　　　　　In and For the County of Lewis and Clark, Cause No. CDV-2018-135
　　　　　　　　Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

　　　　For Appellant Montana Department of Natural Resources and Conservation:

　　　　　　Brian C. Bramblett, Barbara Chillcott, Special Assistant Attorneys General,
　　　　　　Helena, Montana

　　　　For Appellant Montana Artesian Water Company:

　　　　　　John E. Bloomquist, Richard C. Tappan, Bloomquist Law Firm P.C.,
　　　　　　Helena, Montana

　　　　For Appellees and Intervenor:

　　　　　　John J. Ferguson, Graham J. Coppes, Emily F. Wilmott, Ferguson Law
　　　　　　Office PPLC, Missoula, Montana

Elizabeth A. Brennan, Brennan Law & Mediation, PLLC, Missoula, Montana

For Amicus Montana Building Industry Association:

Abigail J. St. Lawrence, Abigail St. Lawrence, Attorney at Law, P.C., Helena, Montana

Submitted on Briefs: January 22, 2020

Decided: May 26, 2020

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 Montana Artesian Water Company ("MAWC") applied for a permit to appropriate water with the Department of Natural Resources and Conservation ("DNRC") but did not include aquifer testing information required by DNRC rules. DNRC failed to identify defects in the application before the statutory deadline, and the application became correct and complete as a matter of law. On judicial review, the District Court concluded that the agency failed to comply with its own rules to determine whether the application was correct and complete and voided the permit without addressing other issues raised. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Applicant MAWC proposes to pump 710.53 acre-feet annually from an artesian well for use in a commercial water bottling plant. The well is located in a deep alluvial aquifer of the Flathead Valley. MAWC filed the Application for Beneficial Water Use Permit No. 76LJ-30102978 with DNRC on June 24, 2015. DNRC issued MAWC a deficiency letter requesting more information regarding the proposed diversion means and beneficial use but did not identify defects in MAWC's aquifer testing information—namely, that it did not include complete information on the observation wells, and the groundwater levels were not monitored prior to the beginning of the pump/aquifer test.

¶3 On December 30, 2015, more than 180 days after the application was filed, DNRC notified MAWC that its application was determined to be correct and complete. DNRC issued a Preliminary Determination to grant the application on January 14, 2016. After a contested case hearing, an appointed Hearing Examiner upheld DNRC's Preliminary

3

Determination to grant the permit. Ten objectors—all of the individual appellees named—and Intervenor Water for Flathead's Future (collectively "Objectors") petitioned the First Judicial District Court for judicial review of the Hearing Examiner's Final Order. Flathead Lakers also petitioned for judicial review, and the District Court consolidated the two actions.

¶4 The Objectors argued at the hearing—as they do on appeal—that DNRC erred when it issued its Preliminary Determination granting MAWC the water use permit based on incomplete data. The Objectors specifically point to Form 633, the "Aquifer Test Data Form," required by Admin. R. M. 36.12.121 (2012).[1] MAWC's Form 633 contained incomplete information regarding its aquifer testing. The Objectors assert that DNRC itself, through rule promulgation, deemed this information mandatory and necessary to its determination whether to grant a permit under § 85-2-311, MCA, the statute setting forth criteria for issuance of a permit. Because MAWC did not include all information required by Form 633 in its application or provide it during the proceedings, the Objectors assert that DNRC did not have enough information to find that MAWC met the required criteria. Section 85-2-311, MCA.

¶5 DNRC and MAWC assert that it is irrelevant that the application did not have all of the Form 633 fields completed because the agency's administrative rules mandating this specific testing information applied only in determining whether an application was correct and complete. They note that the Montana Water Use Act mandates that the application

---

[1] All citations to the Administrative Rules of Montana will be to the rules in effect as of June 25, 2015, the date the application was filed.

4

be deemed correct and complete if DNRC does not notify an applicant of any deficiencies within 180 days. Section 85-2-302(5), MCA. Because 180 days had elapsed, DNRC and MAWC contend that the application was deemed correct and complete as a matter of law, and DNRC could not require the missing information.

¶6 The District Court reversed the Hearing Examiner's decision. It held that DNRC's administrative rules required certain minimum aquifer testing in the permit application criteria; as such, it was erroneous to conclude that the omitted information was not required when analyzing the -311 criteria. The court thus found it unnecessary to consider the Objectors' additional arguments and voided the permit.[2]

## STANDARD OF REVIEW

¶7 The Montana Administrative Procedure Act ("MAPA") governs judicial review of final agency decisions. A reviewing court may reverse or modify an agency decision if substantial rights of the appellant have been prejudiced because the administrative decision is, among other reasons: affected by an error of law; clearly erroneous in view of the whole record; or arbitrary or capricious. Section 2-4-704(2)(a)(iv)-(vi), MCA. A district court reviews an administrative agency's conclusions of law for correctness. *Mont. Fish, Wildlife & Parks v. Trap Free Mont. Pub. Lands*, 2018 MT 120, ¶ 11, 391 Mont. 328, 417 P.3d 1100 (citing *Molnar v. Fox*, 2013 MT 132, ¶ 17, 370 Mont. 238, 301 P.3d 824).

---

[2] The District Court identified six issues objectors raised alleging error by the Hearing Examiner: 1) failing to require the mandatory components of aquifer tests; 2) not including analysis of all water sources that must be reviewed for legal availability; 3) determining no adverse effect to senior irrigators; 4) unequally applying the relevant evidence regarding water quality; 5) determining that speculatively accumulating groundwater is a beneficial use; and 6) applying an incorrect standard of review. The District Court found the first issue dispositive.

5

The same standard of review applies to this Court's review of the district court's decision. *Molnar*, ¶ 17.

## DISCUSSION

¶8 DNRC is charged with "coordinat[ing] the development and use of the water resources of the state so as to effect full utilization, conservation, and protection of its waters." Section 85-1-101(3), MCA. The Montana Water Use Act requires any person who wishes to appropriate water after July 1, 1973, to apply for and receive a permit from DNRC. Title 85, chapter 2, MCA. Applicants for a permit to appropriate water must prove that the permit applicant meets the criteria listed in § 85-2-311, MCA, known as the "-311 criteria."

## Permit Process

¶9 Once DNRC receives an application to appropriate water, the agency evaluates whether the application has the requisite "correct and complete" information for it to determine whether to approve or deny the permit. Sections 85-2-102(9), -302(2), MCA.[3] DNRC has adopted administrative rules to guide applicants on criteria it will use to determine when an application is correct and complete. *See* § 85-2-302(2), MCA; Admin. R. M. 36.12.1601. Some of these rules involve minimum requirements for aquifer testing. Admin. R. M. 36.12.1703 provides that applicants for groundwater appropriations "must follow aquifer testing requirements and provide to the department, at a minimum,

---

[3] We cite to the 2019 version of the statutes as there are no relevant substantive changes between the 2015 and 2019 statutes.

6

information and data in conformance with ARM 36.12.121." Applicants submit this information to DNRC using Form 633. Admin. R. M. 36.12.121(2)(f).

¶10    If it determines there is information missing, DNRC notifies the applicant of defects in the application, and the applicant may remedy the defects. Section 85-2-302(5), MCA. Importantly, DNRC has 180 days to notify the applicant of any defects. Section 85-2-302(5), MCA. If DNRC does not provide such notice within those 180 days, the application must be treated as "correct and complete," and the process moves forward. Conversely, if DNRC deems the application incomplete and it is not remedied, DNRC may terminate the application and will not analyze its substance against the -311 criteria. Section 85-2-310(9)(a), MCA; *see Town of Manhattan v. DNRC*, 2012 MT 81, ¶ 11, 364 Mont. 450, 276 P.3d 920.

¶11    After the application is deemed correct and complete, DNRC next determines whether the application meets the requirements for a new appropriation outlined in § 85-2-311, MCA; Admin. R. M. 36.12.1601(2); *see Bostwick Props. v. DNRC*, 2009 MT 181, ¶ 22, 351 Mont. 26, 208 P.3d 868 (After the "correct and complete" determination, the permit application is "thus eligible to go forward in the permit consideration process" and DNRC has a "clear, legal duty to process that application."). The applicant must prove, by a preponderance of the evidence, that it meets the -311 criteria. Section 85-2-311(1), MCA. DNRC then issues a written preliminary determination whether the application meets the requirements of § 85-2-311, MCA, to grant the permit. Section 85-2-307(2), MCA.

7

¶12 If valid objections are filed to an application, DNRC must appoint a hearing examiner to preside over a contested case hearing on the objections. Sections 2-4-601 to -631; 85-2-309(1), MCA. This hearing is an opportunity for the parties to present evidence and argument why the permit should or should not be granted. Section 2-4-612(1), MCA. The hearing examiner's final decision is then reviewable by a district court under MAPA's judicial review provisions. Sections 2-4-701 to -704, MCA.

**MAWC's Application**

¶13 It is undisputed that MAWC's application did not contain all of the information required by Form 633 regarding the aquifer testing. MAWC's application contained information on MAWC's aquifer testing and well logs, but it did not contain details regarding the discharge measurements or the required hourly measurements. DNRC did not notify MAWC of these deficiencies; the deficiency letter DNRC sent to MAWC focused on other missing information.

¶14 The Hearing Examiner held that Objectors' arguments related to the sufficiency of the Form 633 aquifer testing information were more properly directed toward the correct and complete requirements, not the -311 criteria. It concluded that the rules mandating certain aquifer testing implemented the "correct and complete" section of the Water Use Act, not the -311 section. And the application was deemed correct and complete by operation of law once DNRC missed the 180-day deadline to inform the applicant of any defects, so DNRC could not be held in error for failing to obtain and consider the missing information in its -311 criteria determination.

¶15 The District Court disagreed. The court held that § 85-2-311, MCA, and the administrative rules mandate minimum aquifer testing requirements. Failing to adhere to the minimum requirements specified in Form 633 meant that DNRC was unable, as a matter of law, to find the -311 criteria satisfied—DNRC could not lawfully ignore its own rules. The court held that the Hearing Examiner erroneously concluded that there was a legal distinction between the application requirements (Form 633) and the statutory criteria required to obtain a permit (-311 criteria). The court observed that the "analysis regarding the criteria required by the statute comes from the information originally submitted with the application, including Form 633." It reasoned that "the omission of mandatory aquifer testing information and data is not a slight technical deviation" but was critical to the -311 determination. The court held that DNRC missed a mandatory foundational step in determining whether a permit should be granted, and the resulting Preliminary Determination to grant the permit dependent upon that information could not stand as valid or correct.

¶16 On appeal, DNRC and MAWC assert that the administrative rules governing specific aquifer testing pertain only to the correct and complete determination, and that determination is not in question because the application was deemed correct and complete as a matter of law after 180 days. Further, they assert that even without the complete aquifer testing, DNRC and the Hearing Examiner had enough "necessary" information to find by a preponderance of the evidence that MAWC met its burden under the -311 criteria.

¶17 The Objectors respond that the aquifer testing rules reflect DNRC's charge to implement the Water Use Act. Those same rules are critical to a determination whether

the -311 criteria are met. Without strict compliance with the rules—designed to give DNRC necessary information—DNRC could not have enough evidence to make its -311 criteria determination.

¶18 We agree with DNRC and MAWC that the minimum regulations for correct and complete applications are not statutorily mandated. The rules governing specific aquifer testing are rules that DNRC promulgated in order to determine whether an application is correct and complete. Admin. R. M. 36.12.121; 36.12.1601; 36.12.1703. These rules were designed to elicit pertinent information necessary for DNRC to evaluate the -311 criteria. Determining an application as correct and complete is the first step of the process; it allows DNRC to move forward to the -311 analysis. A correct and complete application does not mean that the permit will be granted; the applicant still must show by a preponderance of the evidence that the -311 criteria are met. Admin. R. M. 36.12.1601(4).

¶19 The problem here is that—with or without the aquifer testing information—MAWC's application became correct and complete as a matter of law on December 21, 2015, because DNRC did not notify MAWC of the aquifer testing defects within 180 days after the application was filed. Section 85-2-302(5), MCA. The District Court did not look beyond strict noncompliance with the agency's rules regarding aquifer testing, and essentially held that the application was incorrect or incomplete because it did not have the required aquifer testing information. But § 85-2-302(5), MCA, directs the agency to consider applications as correct and complete when the agency fails to identify any defects within 180 days. The statute forecloses an argument regarding compliance with application requirements the agency imposed by rule.

10

¶20 The parties spend considerable time debating the sufficiency of the evidence, whether the Hearing Examiner was correct in concluding the application met the -311 criteria, and whether DNRC was afforded proper deference for agency action. These arguments are outside of the scope of appeal. The District Court did not make decisions on the adequacy of the Hearing Examiner's findings; it determined as a matter of law that an incomplete aquifer test rendered the entire permitting process invalid. The issue remains whether DNRC's consideration of the application without the additional aquifer testing was arbitrary and capricious and whether its evaluation was clearly erroneous in light of the record. Sections 2-4-704(2)(a)(v) and (vi), MCA.

## CONCLUSION

¶21 We reverse the District Court's Order and remand for further proceedings consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE